United States Court of Appeals

For the Eighth Circuit

_____

No. 23-2389
_____

United States of America

*Plaintiff - Appellee*

v.

Kermit Clay

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Springfield
_____

Submitted: April 8, 2024
Filed: April 22, 2024
[Unpublished]
_____

Before BENTON, ARNOLD, and STRAS, Circuit Judges.
_____

PER CURIAM.

After Kermit Clay completed a five-year prison sentence for receiving and distributing child pornography, *see* 18 U.S.C. § 2252(a)(2), (b)(1), he began a five-year term of supervised release. As we detail below, Clay has struggled to abide by the conditions of his supervision for many years, leading to several modifications of those conditions and to several revocations of his supervision. When the district

court[1] most recently revoked Clay's supervision, it sentenced him to 24-months' imprisonment followed by a lifetime term of supervised release. Clay maintains on appeal that the court's imposition of a lifetime term of supervision is substantively unreasonable. We affirm.

Only a few weeks into Clay's first term of supervision, his probation officer notified the court that Clay had lied about living with a fellow sex offender, so the court modified the conditions of his supervision to require him to reside in a residential reentry center. Over the next few years, the court modified Clay's conditions three more times after he had violated the conditions of his release, including an incident when he had unauthorized contact with two minor children. When the probation office alleged that Clay had violated yet another condition of his supervised release, the district court held a hearing and told Clay that "what you've been doing scares me" and that judges lie "awake at night fearful that someone will move back into [child pornography] and go some other step and into contact." It also told Clay that it "look[ed] like you're priming something." So it sentenced Clay to sixteen days in jail and five more years of supervised release. A few weeks later Clay's probation officer reported that Clay had been dismissed from a residential reentry center for violating the facility's rules, so the court sentenced him to 106 days in prison and five additional years of supervision.

After Clay completed that prison sentence, his probation officer alleged that Clay had possessed pornography, had downloaded an application to his phone that allowed him to exchange sexually explicit material, and had had unauthorized contact with a minor. His probation officer also accused him of sending text messages to his ex-girlfriend's minor daughter, which the probation office had specifically warned

---

[1]The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri.

him against. The court revoked Clay's supervised release yet again and sentenced him to six months in prison and five more years of supervision.

During Clay's next term of supervision, his probation officer informed the court that he had encountered Clay and a thirteen-year-old girl walking through a mall together. When the officer confronted Clay, he claimed that the girl was his daughter. The officer, however, knew that Clay didn't have a daughter. Clay admitted the allegation against him. At a hearing, the court explained that Clay was displaying "classic grooming behavior" and that "[t]he only thing that's missing is actual touching of an innocent little girl." The district judge remarked that he and Clay "have had this conversation five times" and that this incident at the mall "concern[ed] the heck out of" him. It also noted that Clay was "a really good talker" who had manipulated the child's mother into giving him access to the girl. So it sentenced Clay to nine months in prison and fifteen more years of supervised release. When Clay appealed to our court, asserting that the length of the supervised-release term was unreasonable, we affirmed in a two-paragraph opinion. *See United States v. Clay*, 2022 WL 6885270, at *1 (8th Cir. Oct. 12, 2022) (unpublished per curiam).

We finally arrive at the current supervised-release violations. Less than six months into Clay's new term of supervision, his probation officer informed the court that officers had found "dozens if not hundreds of videos" saved on Clay's television that depicted adult pornography and child erotica, including "[s]everal videos contain[ing] images of topless prepubescent females, children in swimwear on the beach, prepubescent females doing gymnastics stretching, videos of teens dancing sexually, and a video of a possible teen female doing sexual movements on a bed." Clay eventually "admitted to searching for and viewing videos of minor females for as many as four months," or just a few months after completing his most recent stint in prison.

The court found that Clay had committed the alleged violations. In recommending a sentence, defense counsel told the court that Clay had admitted an addiction "related to younger individuals," specifically, "prepubescent girls" from ages twelve to sixteen. Defense counsel also agreed with the government that the child erotica Clay possessed was "a huge flag," and though it wasn't child pornography, "it's probably the next step to that." The court found that Clay had "shown a pattern of noncompliant behavior throughout" supervision. It recounted some of Clay's history on supervised release and lamented "that we keep coming back and you keep causing me to have an enormous concern for young, underage girls in my community with your behavior and how you are conducting yourself." The court then sentenced Clay to two years in prison and a lifetime of supervised release.

Clay maintains on appeal that the court abused its discretion by sentencing him to a lifetime of supervision. He contends that he "has no history, alleged or otherwise, of 'grooming' minors for sexual exploitation or any actual sexual 'acting out' toward minors." The record belies his contention. The court specifically found at Clay's prior revocation hearing, on a more than ample record, that he had displayed "classic grooming behavior," and it was not required to wait until Clay acted out more overtly to respond to the threat that his behavior created. The court also properly considered the need to protect the public from Clay and deter him from committing any crimes. *See* 18 U.S.C. § 3583(c), (e). He was convicted of a child-pornography offense, has an admitted attraction to underage girls that he is unable or unwilling to control, and has a lengthy history of violating the conditions of supervised release, including conditions relating to his interactions with minors and his possession of pornography. And Clay admitted that his most recent violations occurred mere months after he commenced another revocation term. *Cf. United States v. Phillips*, 785 F.3d 282, 283–84 (8th Cir. 2015). Clay's case is meritless. The case for having Clay under lifetime supervision is manifest. We detect no abuse of discretion here.

Affirmed.

_____